**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCIA C. MACIAS DE ALVAREZ, ) <br> Plaintiff, ) <br> v. ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> Defendant. ) | NO. CV 11-1080 AGR <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff ("Alvarez") filed this action on February 3, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on February 11 and March 3, 2011. (Dkt. Nos. 6, 7.) On October 4, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

Alvarez filed applications for disability insurance and supplemental security income benefits on September 6 and September 20, 2007, respectively. Administrative Record ("AR") 18. Both applications alleged an onset date of June 1, 2003[1] and were denied initially. AR 18. Alvarez requested a hearing before an Administrative Law Judge ("ALJ"). AR 69. On July 23, 2009, the ALJ conducted a hearing at which Alvarez[2] and a vocational expert testified. AR 29-58. On August 27, 2009, the ALJ issued a decision denying benefits. AR 12-28. On January 11, 2011, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must

---

[1] Alvarez testified that she was laid off on that date. AR 33, 38.

[2] An interpreter was present to assist Alvarez. AR 29.

defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. ALJ's Findings

The ALJ found that Alvarez met the insured status requirements through December 31, 2008. AR 20. Alvarez had the following severe impairments: "cervical and lumbar degenerative disc disease/spondylosis; carpal tunnel syndrome, and depressive disorder, not otherwise specified." *Id.*

Alvarez had the residual functional capacity ("RFC") to perform less than the full range of medium work in that "she can exert 20 to 50 pounds of force occasionally and/or 10 to 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects." AR 22. Her "[p]hysical demand requirements are in excess of those for light work." *Id.* She can "perform work that does not require climbing ladders, ropes or scaffolds, but may require frequent climbing of ramps or stairs. She can also perform work that requires no more than frequent stooping and crouching, but no more than occasional kneeling and crawling." *Id.* She "can frequently finger objects (i.e., fine manipulation), but not finger objects smaller than a coin." *Id.* "She can perform work that does not involve any concentrated exposure to hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions." *Id.*

3

Alvarez is unable to perform her past relevant work. AR 26. However, "there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as packager (with 50% erosion of the occupational base), laundry worker II, and dining room attendant. AR 26-27.

### C.     Examining and Non-Examining Physicians

Alvarez contends that, although the ALJ stated he gave considerable weight to the opinions of physicians who treated or examined her, the ALJ's decision is inconsistent with the medical record. (JS at 4.) The only "examples" cited by Alvarez involve the ALJ's interpretation of medical records of examining and non-examining physicians.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and quotation marks omitted). When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* at 1164 (citation omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 1.     Dr. Sohn

On September 10, 2004, Dr. Sohn, an orthopaedic surgeon and Agreed

4

Medical Examiner ("AME") for the Worker's Compensation claim, examined Alvarez with an interpreter and reviewed medical records. AR 488-505. Dr. Sohn diagnosed spondylosis of the cervical and lumbar spine with mild bulging and carpal tunnel. AR 502. Dr. Sohn found some findings suggestive of carpal tunnel. AR 499, 502.

As the ALJ noted, Dr. Sohn opined Alvarez was "'limited to no very heavy work' with respect to the cervical and lumbar spine and with respect to her hands, she is limited to no very forceful activities and is precluded from fine manipulation.'"[3] AR 25, 502-03. The ALJ gave Dr. Sohn's opinion "considerable weight" because Dr. Sohn's opinion was "not inconsistent with other medical and non-medical evidence in the file as reflected by his thorough review of medical records; contain[ed] clearly stated functional conclusions based upon the impairments; and is supported by medically acceptable clinical signs and laboratory results." AR 25. The ALJ further relied upon Dr. Sohn's credentials and specialty in orthopedic surgery. *Id.*

Although the ALJ appears to have accepted Dr. Sohn's opinion that Alvarez is precluded from fine manipulation (AR 25), the ALJ's RFC assessment provided that Alvarez "can frequently finger objects (i.e., fine manipulation), but not finger objects smaller than a coin." AR 22.

The Commissioner argues that the restrictions against fine manipulation in the worker's compensation context "would not necessarily have the same meaning as the term is used by the SSA." (JS at 11 n.4.) The ALJ must translate terms of art in worker's compensation medical opinions into the corresponding Social Security terminology. *See Desrosiers v. Sec'y of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). The Commissioner concedes that the ALJ "must explain the basis for any material inference the ALJ has drawn

---

[3] Dr. Sohn's supplemental report on June 19, 2006 did not alter these functional limitations. AR 483-84.

from those opinions so that meaningful judicial review will be facilitated." (JS at 10) (citing *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002).) The court in *Booth* stated that "[w]hile the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." 181 F. Supp. 2d at 1106.

The ALJ's decision does not indicate an intention to reject Dr. Sohn's opinion that Alvarez is precluded from fine manipulation. Nor is there any indication that the ALJ interpreted fine manipulation in the social security context as different from the same term in the workers' compensation context. If the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. *See* Social Security Ruling 96-8p, at *7[4]; *Widmark v. Barnhart*, 454 F.3d 1063, 1067-68 (9th Cir. 2006). Because the ALJ's finding is ambiguous, this matter must be remanded so that the ALJ can clear up the ambiguity as to whether Alvarez is precluded from fine manipulation or whether the ALJ intended to provide specific and legitimate reasons for rejecting Dr. Sohn's limitation. The ALJ may conduct further proceedings as appropriate.

### 2. Dr. Sourehnissani and Dr. Lightfoot

Alvarez argues the ALJ improperly rejected the opinions of examining physician Dr. Sourehnissani and state agency reviewing physician Dr. Lightfoot.

The ALJ discussed Dr. Sourehnissani's internal medicine evaluation on November 30, 2007. AR 23, 421-26. Dr. Sourehnissani diagnosed Alvarez with

---

[4] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

"high blood pressure, chest pain with atypical features, back pain, right wrist pain reportedly with diagnosis of carpal tunnel syndrome, and depression." AR 23, 425. The ALJ noted that Dr. Sourehnissani restricted Alvarez to light work because of a "lumbosacral spine x-ray showing early hypertrophic lipping, and a right hand x-ray showing soft tissue swelling over the phalanges and narrowing of the interphalangeal joint." AR 23, 425. The conclusions reached by Dr. Lightfoot "essentially mirror[ed] those of Dr. Sourehnissani." AR 23, 447-52.

The ALJ rejected these opinions because the "[m]ore recent treatment records indicate [her] hypertension is diet and medication controlled as per her treatment records [] and that more recently diagnosed rheumatoid arthritis [] has much improved with steroids and other medications. Thus, such medical improvement is indicative of a less restrictive residual functional capacity than previously opined by Dr. Sourehnissani and the State agency." *Id.* (citations omitted). Subsequent treatment records show that Alvarez's hypertension, joint pain and rheumatoid arthritis were "better" and "controlled." AR 528-30; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ cites "specific and legitimate reasons" for rejecting medical evidence when the ALJ " 'set[s] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[es][any] interpretation thereof, and mak [es] findings.'"); *Andrews*, 53 F.3d at 1041 (ALJ has "sole[ ] province" to resolve conflicts between credible, yet conflicting, medical evidence).

Alvarez argues that Dr. Sourehnissani's examination did not concern hypertension or arthritis. Dr. Sourehnissani's report indicates he did a complete examination, including blood pressure, musculoskeletal, extremities, and neurological. AR 422-25. The later diagnosis of arthritis appears to have been based on Alvarez's complaints of clavicle pain, neck pain, arthralgia, wrist pain, shoulder pain and joint pain. AR 528-32. The ALJ could reasonably interpret the medical records to refer to similar pain symptoms. The ALJ did not err.

7

### 3. Dr. Florescio

Alvarez argues that the ALJ improperly "offered no mental restrictions" in her RFC despite finding that she had a severe impairment of depressive disorder at step two of the sequential analysis. (JS at 7.) The Ninth Circuit has rejected the argument that a finding of a severe mental impairment at step two automatically corresponds to limitations on a claimant's ability to perform work activities. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228-29 (9th Cir. 2009); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of symptoms or impairment is insufficient proof of disability).

Alvarez further argues that the examining psychiatrist, Dr. Florescio, determined that her ability to do simple work was not limited, and that a reasonable inference from this opinion is that she must have other functional limitations. Dr. Florescio found that Alvarez's "ability to focus attention was not limited," her "ability to follow simple oral and written instructions was not limited," her "ability to adjust and cope with the stresses common to a simple work environment was not limited" and her "daily activities were not limited." AR 431. Alvarez fails to cite to any work related limitations noted in Dr. Florescio's report. A review of Dr. Florescio's findings during the mental status examination does not reveal such limitations. AR 429-30. He found her "memory and concentration are intact." AR 431. The ALJ did not err.

### D. **Credibility**

Alvarez contends the ALJ improperly assessed her subjective symptom testimony.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably

be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc)). The ALJ found that Alvarez's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 23.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88–13) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ made no finding of malingering. The ALJ found that Alvarez's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR 23. The ALJ cited four reasons: (1) lack of objective medical evidence; (2) routine, conservative treatment; (3) daily activities; and (4) financial motivation. AR 23-26.

### 1. Objective Medical Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

With respect to Alvarez's mental condition, the ALJ found there was no objective medical evidence to show that her pain and depression limited her ability to the extent that she alleged. AR 23. Alvarez does not identify any error in the ALJ's assessment of the medical evidence. The ALJ relied on Alvarez's treatment records and the opinions of Dr. Faguet and Dr. Florescio. AR 23-24.

The ALJ's reason is supported by substantial evidence. After examination on December 15, 2007, Dr. Florescio opined that Alvarez's speech was normal, she was clear and coherent, her mood was euthmyic and her affect was appropriate. AR 429. There was no loosening of association, no flight of ideas and no thought blocking. *Id.* She had no delusions, and was alert and oriented. *Id.* Her concentration was intact, and she was able to focus and respond to questions immediately. *Id.* Her immediate memory was mildly impaired. *Id.* She had good insight and judgement. AR 430. Dr. Florescio determined that Alvarez was able to describe "some symptoms of depression but objectively she did not show severe signs of depression." AR 431. She was not limited in her ability to: focus attention, follow simple oral and written instructions, adjust and cope with stresses common to a simple work environment and in her daily activities. *Id.*

Dr. Faguet opined that Alvarez had "very slight" functional limitation in her ability to comprehend and follow instructions, and to perform simple and repetitive

tasks. AR 481. She was "slight to slight to moderate" in her ability to: maintain work pace appropriate to given workload, perform complex or varied tasks, relate to others beyond giving and receiving instructions, make evaluations or decisions without immediate supervision, and accept and carry out responsibility for direction, control and planning. *Id.* Dr. Faguet opined that Alvarez's slight to moderate subjective complaints did not preclude vocational feasibility. AR 470.

With respect to Alvarez's physical condition, the ALJ relied on Dr. Sohn's report as well as subsequent treatment notes indicating improvement, as discussed above in III.C.1. AR 23, 25. Dr. Sohn diagnosed Alvarez with spondylosis of the cervical and lumbar spine with mild bulging and carpal tunnel. AR 502. Alvarez argues that ALJ erroneously referred to the absence of ratable subjective complaints of the hands, when the report actually refers to knees. *Id.* This does appear to be a typographical error. With respect to Alvarez's hands, Dr. Sohn noted complaints of pain rated as intermittent and slight. *Id.* Any transcription error was harmless.

The ALJ's reason was supported by substantial evidence.

### 2.  Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Alvarez does not address this reason. The ALJ noted that Alvarez's course of treatment had been "quite conservative and not reflective of the alleged intensity, duration, frequency, and purported limiting effects of symptoms." AR 24. Dr. Sohn's course of treatment consisted of "access to orthopaedic evaluation on an as-needed basis, analgesic and anti-inflammatory medication, and home-administered exercises" and that there was "no need for any surgery." AR 24, 503. As discussed above, Alvarez's hypertension and rheumatoid arthritis were controlled with diet and medication. AR 23, 528-30. Dr. Sourehnissani found Alvarez did not need an assistive aid for

11

ambulation. AR 24, 425. The ALJ's reliance on conservative treatment is supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment).

### 3. Daily Activities

Alvarez argues the ALJ's reliance on her activities of daily living was improper because the ALJ "mischaracterized" her statements. An ALJ may consider the claimant's daily activities in weighing a claimant's credibility. *Id.* at 1039. The ALJ found that Alvarez's lifestyle was "consistent with the residual functional capacity" and undermines her subjective allegations. AR 24. Alvarez "cares for [her husband] and their children, cooks simple meals such as breakfast, engages in household chores such as dusting, watering plants and feeding the dog, and that she goes shopping once a month." *Id.*

Alvarez disputes the ALJ's finding as to her dog. However, Alvarez's function report states that she cares for her dog and, specifically, lists "talk with him, feed."[5] AR 142. Alvarez argues she never said she cooked for the family. The ALJ found Alvarez could "cook simple meals, such as breakfast" but does not state she did those things for the family. AR 24. Alvarez's function report lists "make breakfast" as one of her daily activities. AR 141. She is able to prepare her own meals and, specifically, "salads, simple things like eggs." AR 143. Alvarez argues she never stated she took care of others. She testified that her husband and children pamper her. AR 39. On the other hand, Alvarez testified that she washes the dishes, and "start[s] a wash." AR 44. She keeps a garden. AR 45. She goes shopping for food with her children twice per month. AR 144.

---

[5] Her husband helps her wash the dog. AR 142.

The ALJ could reasonably interpret these activities as care for the family.[6] The ALJ's reason is supported by substantial evidence.

### 4. Financial Motive

The ALJ found that Alvarez's worker's compensation settlement of $65,000 provided her with an "alternative source of income and suggests the possibility that she may be making a lifestyle choice not to work." AR 24. An ALJ may consider "motivation to work" based on the claimant's financial reserve. *See Tommasetti*, 533 F.3d at 1040 ("we cannot say that the ALJ's inference regarding Tommasetti's motivation to work based on this savings [of $97,000] was unreasonable").[7]

Moreover, even if one or more of the ALJ's reasons for discounting Macias De Alvarez's credibility was unsupported, remand would not necessarily be warranted. In *Carmickle v. Comm'r, SSA*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. When an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and* ultimate credibility determination." *Id.* at 1162 (italics in original). Reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). In light of the ALJ's valid reasons for discounting Alvarez's credibility and the record as a whole, substantial evidence supported the ALJ's

---

[6] Alvarez's husband answered "yes" to the question "Does this person take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?" AR 150. The report also indicated she gets help from her husband and children. *Id.*

[7] Alvarez improperly cites an unpublished Ninth Circuit decision dated prior to 2007. (JS at 15 (citing *Estate of Donald Bird v. Sec'y of Health & Human Services*, Case No. 93-35933 (9th Cir. Nov. 7, 1994).) Her argument that *Bird* is citable as law of the case is completely without merit. Alvarez clearly cites to *Bird* as precedent, not as law of the case.

1 credibility finding.  *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (any error was harmless even if record did not support one of four reasons for discounting claimant's testimony).  Therefore, "we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 26, 2012

ALICIA G. ROSENBERG
United States Magistrate Judge